UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN BELLEFANT,

Plaintiff,

v.

CLEOPHUS BRAY, KATHLEEN LEFFINGWELL, RANDY VanSUMEREN, CARLA GROSS, CURTINA JONES, SHARON OLIVER, JANE DOE, and JOHN DOE,

Defendants.

_______________________________________/

Case No. 2:23-cv-10666
District Judge Matthew F. Leitman
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION TO DENY DEFENDANT SHARON OLIVER'S MOTION TO DISMISS (ECF No. 8) AND GRANT IN PART AND DENY IN PART DEFENDANTS CARLA GROSS, CURTINA JONES, AND KATHLEEN LEFFINGWELL'S MOTION FOR SUMMARY JUDGMENT (ECF No. 27)**[1]

## I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Stephen

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

Bellefant (Bellefant)[2] is suing defendants Cleophus Bray (Bray), Kathleen Leffingwell (Leffingwell), Randy VanSumeren (VanSumeren), Carla Gross (Gross), Curtina Jones (Jones), Sharon Oliver (Oliver), and Jane and John Does, alleging that he fell into a diabetic coma following deliberately indifferent treatment of his symptoms and corrections staff ignoring his pleas for help. *See* ECF No. 1-1. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 9).

Before the Court is a motion to dismiss for failure to state a claim filed by Oliver, (ECF No. 9), and a motion for summary judgment on the basis of exhaustion filed by Gross, Jones, and Leffingwell (or MDOC medical defendants), (ECF No. 27). The motions are fully briefed, (ECF Nos. 18, 19, 28, 30, 31, 32), and ready for consideration.

For the reasons set forth below, it is RECOMMENDED that Oliver's motion to dismiss be DENIED, and Gross, Jones, and Leffingwell's motion for summary judgment be GRANTED IN PART and DENIED IN PART. Bellefant's claims against Jones should be DISMISSED WITHOUT PREJUDICE. And the following claims should survive dismissal at this stage:

- Oliver was deliberately indifferent when she ignored Bellefant's

[2] Bellefant was proceeding *pro se* until December 13, 2023. On that date, attorney Paul Matouka entered an appearance on Bellefant's behalf. (ECF No. 34). Bellefant was *pro se* when he filed responses to the motions now before the Court.

medical kites dated February 3, 2022, and April 17, 2022;

- Bray, VanSumeren, and Jane and John Does witnessed Bellefant's medical emergency the evening of May 17, 2022, but ignored Bellefant's request for healthcare and did not notify healthcare; and
- Gross, Leffingwell, Bray, VanSumeren, and Jane and John Does were deliberately indifferent when they ignored Bellefant's request for necessary medical treatment in May 2022.

## II. Background

The following facts are gleaned from the complaint.

At all relevant times, defendants were employed in various capacities at Saginaw Correctional Facility (SRF) where Bellefant was incarcerated. (ECF No. 1-1, PageID.14-15). Oliver is a doctor, Gross and Leffingwell are nurses, Bray is a corrections officer, and VanSumeren is a sergeant. (*Id.*). "Jane and John Does are medical staff and corrections officers" who Bellefant has yet to identify. (*Id.*, PageID.15).

When Bellefant completed intake forms for the Michigan Department of Corrections (MDOC), he noted that "he has a family history of diabetes, as his mother and other relatives have diabetes." (*Id.*). Bellefant asserts that Oliver, Gross, and Leffingwell thus "knew or should have know that [he] was highly susceptible to getting diabetes" and "should have been on the lookout for diabetic symptoms." (*Id.*).

On both February 3, 2022, and April 17, 2022, Bellefant sent kites to Oliver

concerning symptoms he was experiencing that he thought may be attributable to diabetes. (*Id.*, PageID.16). He did not receive a response to either kite and the kites were not entered into his medical record. (*Id.*, PageID.16, 19). Bellefant says that it was the "regular practice" of healthcare staff to ignore "urgent medical kites" and to not include the kites in prisoners' medical files. (*Id.*, PageID.16).

On either May 16 or 17, 2022, Bellefant was seen by Gross. (*Id.*). He told her that he was experiencing symptoms including "severe back pains, trouble breathing, nausea, and confusion, [and] also informed her that diabetes runs in his family; and asked to have his blood sugar checked." (*Id.*).[3] On both May 16 and 17, 2022, Bellefant sent kites regarding these medical issues. (*Id.*, PageID.19). MDOC medical defendants did not assess Bellefant's medical condition as urgent/emergent despite his insistence that he needed immediate medical treatment. (*Id.*, PageID.20).

On the evening of May 17, 2022, Bellefant asked Bray, VanSumeren, and Jane/John Doe corrections officers to "provide him with urgent/emergent medical treatment[.]" (*Id.*, PageID.20). They failed to do so. (*Id.*). They also ignored Bellefant's "serious physical condition of throwing up, passing out, being nonresponsive," and him telling them that he was experiencing numerous other

---

[3] Three fellow inmates submitted affidavits supporting Bellefant's narrative. (ECF No. 1-1, PageID.16-19).

physical symptoms. (*Id.*).

On May 19, 2022, Bellefant woke up in the intensive care unit (ICU) of St. Mary's Hospital. (*Id.*, PageID.18). An ICU nurse told Bellefant that he had been in a diabetic coma and would have died if he had been brought to the hospital any later. (*Id.*).

Bellefant says that Oliver and MDOC medical defendants have "intentionally falsified his medical records, investigation results, and grievance responses, to conceal their deliberate indifference actions and omission[s], to protect themselves and each other from liability of depriving [him] of needed medical attention." (*Id.*, PageID.18, 20). Bellefant further says that if Oliver had properly reviewed his medical records when investigating his kites that she would have known to order testing of his blood sugar levels. (*Id.*, PageID.18-19).

## III. Legal Standards

### A. Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Bellefant was *pro se* when he responded to the motion does not

reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV. Discussion

### A. Motion to Dismiss

#### 1. Deliberate Indifferent Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 834). In *Farmer*, the Supreme Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a

substantial risk of serious harm." 511 U.S. at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under "the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702 (citing *Farmer*, 511 U.S. at 834).

2. Application

Oliver argues that Bellefant has failed to state a claim for deliberate indifference against her as he has not pled allegations satisfying either the objective or subjective components of the relevant standard. The undersigned disagrees.

Turning first to the objective component, a medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore*, 390 F.3d at 898. If it is not obvious, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed [at trial]." *Id.* (cleaned up). "Diabetes unquestionably is a serious medical condition." *Aull v. Osborne*, No. 4:07CV–00016, 2009 WL 111740, at *6 (W.D. Ky. Jan 15, 2009) (citing *Atkins v.*

*Vadlamudi*, No. No. 07-10547, 2008 WL 1795023, at *5 (E.D. Mich. Mar. 18, 2008)).

Here, Bellefant has sufficiently pled facts to support the objective component of his deliberate indifferent claim against Oliver. Even if a layperson would not have recognized that Bellefant needed immediate medical attention on the basis of his symptoms alone, Bellefant has pled that he suffered a detrimental effect from his delayed treatment. Namely, he fell into a diabetic coma after his symptoms were disregarded by healthcare staff including Oliver. This is the type of detrimental effect that can establish the existence of a sufficiently serious medical need.

As to the subjective component, Bellefant has pled that he sent two kites addressed to Oliver, the first on February 3, 2022, and the second on April 17, 2022. He alleges that he asked Oliver to test his blood sugar "because he had been experiencing some mild symptoms of diabetes," and had a family history of the same. (ECF No. 1-1, PageID.15). While Oliver argues that she may have never seen these kites, Bellefant alleges that the kites were addressed directly to Oliver. Because this is a motion to dismiss, Bellefant's *pro se* complaint must be read liberally and his allegations accepted as true. Under this standard, Bellefant's claim for deliberate indifference against Oliver should proceed at this stage.

B. Motion for Summary Judgment

1. Exhaustion Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D.

Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

2. Application

Jones and Leffingwell argue that Bellefant has failed to exhaust any claims

against them while Gross argues that Bellefant has only exhausted his claim related to her alleged deliberate indifference of his medical needs. In his response to MDOC medical defendants' motion, Bellefant concedes that he failed to exhaust as to Jones. (ECF No. 28, PageID.254). Accordingly, Jones should be dismissed without prejudice.

The relevant grievance is SRF/ 2022/ 05/ 0523/ 12E1. (ECF No. 27-3, PageID.232-233). In this grievance, Bellefant details the inadequate and/or absence of medical care he received from "Gross and/or Jane and John Does medical providers" in May 2022, immediately preceding his diabetic coma. (*Id.*). While Gross concedes that this grievance exhausts Bellefant's claim for deliberate indifference against her, Leffingwell argues that because she was not specifically named, Bellefant's claim for deliberate indifference should be dismissed as to her. This argument does not carry the day.

As noted above, grievances must contain the dates, times, places, and *names* of all those involved. *Reed-Bey v. Pramstaller*, 603 F.3d at 324.

> Although a failure to name a specific individual in a grievance may not always render exhaustion inadequate, especially where the grievance is addressed on the merits and not rejected as unduly vague, *a plaintiff fails to exhaust administrative remedies as to a particular defendant not identified in the grievance if the plaintiff specifically identifies other defendants by name and nothing in the grievance would put the unnamed defendants on notice*.

*Kensu v. Rapelje*, No. 12-11877, 2013 WL 1774637, at *4 (E.D. Mich. Apr. 25,

2013) (internal citations omitted) (emphasis added); *see also Vandiver v. Vasbinder*, No. 08-10508, 2012 WL 4355536, at *1 (E.D. Mich. 2012); *Walls v. O'Connor*, No. 12-11874, 2013 WL 572449, at *6 (E.D. Mich. Jan. 22, 2013), *report and recommendation adopted*, 2013 WL 571752 (E.D. Mich. Feb. 13, 2013).

That said, a court "may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was involved." *Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008) (citing *Binion v. Glover,* 2008 WL 4097407, at *4 (E.D. Mich. Aug. 29, 2008)); *see also Bailey v. Michigan Dep't of Corrs.*, No. 19-13442, 2020 WL 4934314, at *4 (E.D. Mich. Aug. 24, 2020) ("The failure to identify a person by name does not preclude a finding of exhaustion 'as long as the prisoner identifies a defendant based on the factual allegations.' " (quoting *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003))). "Where a prisoner is not able to identify all appropriate personnel in compliance with the grievance procedure, there is no failure to exhaust." *Benson v. Brunette*, No. 12-10095, 2013 WL 1301551, at *4 (E.D. Mich. Feb. 25, 2013), *report and recommendation adopted*, 2013 WL 1283476 (E.D. Mich. Mar. 28, 2013). As explained by the Eleventh Circuit,

> "[§] 1997e(a) requires a prisoner to exhaust all 'available' administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses. But a prisoner cannot provide that which he does not have; he cannot identify those whose identities are unknown to him. Pegging our thinking to the words of the statute, a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is 'available' to the prisoner."

*Merriweather v. Zamora*, No. 04 CV 71706 DT, 2006 WL 2711809, at *9 (E.D. Mich. Sept. 21, 2006) (quoting *Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000)).

Here, not only did Bellefant indicate that there were John and/or Jane Doe medical providers he was unable to identify, Leffingwell was identified by the Step I respondent for the MDOC as one of the nurses who examined Bellefant during the relevant period. (ECF No. 27-3, PageID.234). Thus, the MDOC and Leffingwell specifically have been on notice from almost the moment that Bellefant filed his grievance that he was alleging she failed to provide him with appropriate medical care. Under these circumstances, the undersigned finds that Bellefant has properly exhausted his claim for deliberate indifference as to both Gross and Leffingwell.

## V. Conclusion

For the reasons stated above, it is RECOMMENDED that Oliver's motion to dismiss for failure to state a claim, (ECF No. 9), be DENIED, and Gross, Jones,

and Leffingwell's motion for summary judgment on the basis of exhaustion, (ECF No. 27), be GRANTED IN PART and DENIED IN PART. Bellefant's claims against Jones should be DISMISSED WITHOUT PREJUDICE. And the following claims should survive dismissal at this stage:

- Oliver was deliberately indifferent when she ignored Bellefant's medical kites dated February 3, 2022, and April 17, 2022;

- Bray, VanSumeren, and Jane and John Does witnessed Bellefant's medical emergency the evening of May 17, 2022, but ignored Bellefant's request for healthcare and did not notify healthcare; and

- Gross, Leffingwell, Bray, VanSumeren, and Jane and John Does were deliberately indifferent when they ignored Bellefant's request for necessary medical treatment in May 2022.

Dated: December 21, 2023
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 21, 2023.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager